MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. WILLIAMS.

4-8377                                    208 S. W. 2d 187

Opinion delivered February 2, 1948.

Rehearing denied March 1, 1948.

*Henry Donham* and *Thomas Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

GRIFFIN SMITH, Chief Justice. Unauthorized diversion of the natural flowage of Garrison Creek and resulting damage to farm lands were alleged in the complaint, resulting in judgment for $2,000.

The Railroad Company as defendant thinks the trial court erred in two respects, either of which would be controlling: First, evidence upon which the verdict rests was insubstantial; secondly, physical transactions resulting in obstruction of the stream were departures from terms of an agreement between the Railroad Company and Maguire & O'Brien. The latter, it is contended, as independent contractors had undertaken to perform a specific task, and in respect of means and methods appellant was not concerned. Its interest was in the result. *St. Louis, I. M. & S. R'y. Co.* v. *Gillihan,* 77 Ark. 551, 92 S. W. 793; *Moore and Chicago Mill & Lumber Co.* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722.

Before 1942 elevation and contour of appellant's lines between Van Buren and Greenwood Junction were unsatisfactory. The trackage was less than half a mile from Arkansas River at points where the right-of-way adjoined nearly 150 acres of Verna Williams' land that is generally south of where new construction was necessary.

Maguire & O'Brien, supervised by appellant's engineer, or contractually subject to his supervision, dumped into the stream a small quantity of stone, " . . . very sizeable, . . . the largest about a yard, . . . probably 1,000 or 1,500 pounds of these." But in addition there was an area 880 feet along the track where rock or shale had been removed and deposited on or near Mrs. Williams' property. The wastepile varies in depth from an estimated ten or twelve feet; and for a distance of 600 feet the width is from 25 to 55 feet.

When water from the creek is forced against this fill there is no natural outlet to the north, particularly at points designated as essential by the engineer-witness L. B. Bryan, who said that the area owned by appellee to the south was "low bottom land" suitable for spinach. In substance the testimony sums up to the proposition that although the lands now are, and formerly had been subject to Arkansas River overflows, and no one could say with mathematical accuracy how *much* head- or backwater would be impeded in escape to the river because of the obstruction, it was quite obvious the natural grade had been changed, and that acceleration of flowage was causing erosion, with resulting damage.

It was sought to show that a small bridge built of concrete, dirt, and stone, with a 42-inch drainpipe beneath, might account for some of the damage. The structure had been erected for Mrs. Williams at a cost of $564. Facts relating to it and a probability that it would measurably contribute to the injuries were before the jury, and the presumption attaches that they were taken into consideration.

Was the verdict justified?

When insufficiency of evidence is alleged we look to the abstract to determine whether, as a matter of law, there was substantial testimony upon which the verdict could rest. When at trial the plaintiff has met this burden, or if a deficiency has been inadvertently supplied by the defendant, it is the Court's duty to submit the controversy to the jury. If in the Court's opinion the verdict is not sustained by a *preponderance* of the evidence, it should be set aside. On appeal, however, there is a conclusive presumption that the Circuit Judge exercised a sound discretion; hence we look only for substantiality in the evidence as distinguished from a preponderance. But see *Mueller* v. *Coffman*, 132 Ark. 45, 200 S. W. 136.

It is insisted that because Mrs. Williams (who dealt in real estate and had knowledge of market values) testified the lands adversely affected were worth $5,000 before the dump was erected and only $3,000 thereafter, it is not reasonable to say that the difference of $2,000

was a loss she sustained because of the tort; and this, it is argued, is demonstrated by appellee who as a witness in March 1947 when asked if she would sell for $5,000, replied that she would not. We agree with counsel for appellee that Mrs. Williams could truthfully express her opinion regarding the extent of damage and at the same time exercise a right to refuse $5,000 for the property, even though she believed it to be intrinsically worth but $3,000. The area of 150 acres adjoined other property she owned, and though eroded, it could have a sentimental value, or a usage peculiar to appellee's needs. The estimate of $5,000 related to 1942, or 1943, and the damage occurred when the embankment was erected. Suit was filed in October 1944. The contract called for completion of the work in July 1942.

There is no occasion to pass upon what may appear to be an inconsistent attitude, but one which is not, as a matter of law, contradictory. It is, nevertheless, quite evident that the full impact of the injury was computed and that the loss of $2,000 covered present and prospective depreciation, and excludes the theory of recurrence.

Appellant's plea that it is relieved because Maguire & O'Brien were independent contractors must fail, even if it should be conceded that in some respects *Railroad* v. *Gillihan,* and *Moore, etc.,* v. *Phillips,* have analogy with the case at bar. One controlling distinction severs recourse to the authorities relied upon.

The Construction Contract (1-a) defines engineer as "the carrier's . . . duly authorized representative." The specifications for grading deal with materials *from* excavations. If the quantity excavated exceeded requirements for building embankments, " . . . the surplus shall be used or disposed of as directed by the Engineer."

This is not a controversy between the Railroad Company and its contracting firm. Appellant had the right by independent action (or possibly by affirmative pleadings in this suit) to seek reimbursement for any loss it sustained by reason of faulty disposal. In the absence of any showing other than the contract it must be pre-

sumed that the Engineer acquiesced in what was done. But whether he did or did not, he had that right, and if not availed of then, appellant cannot now avoid liability for something another did that the engineer could have prevented.

Affirmed.